UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH LUTHER,

    Plaintiff,

v.

CONVERGENT OUTSOURCING, INC.,
and PALISADES COLLECTION, LLC,

    Defendants.
_____/

Case No. 15-10902

HON. AVERN COHN

## MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION (DOC. 26).

### I. INTRODUCTION

This is a Fair Debt Collection Practices Act (FDCPA) case. Plaintiff Joseph Luther (Luther) claims that Defendants Convergent Outsourcing, Inc. (Convergent) and Palisades Collection, LLC (Palisades)[1] violated various provisions of the FDCPA, 15 U.S.C. § 1692, et seq., by seeking collection of debts from Luther and other putative class members through letters that offered settlement of the debts without disclosing that the debts were time barred.

Now before the Court is Luther's Motion for Class Certification. (Doc. 26). For the reasons that follow, the motion is GRANTED.

### II. BACKGROUND

#### A.

Luther is a resident of Michigan. Palisades, a Delaware limited liability company that does business in Michigan, is a "debt collector" as defined by the FDCPA that is in

---

[1] Collectively Defendants where appropriate.

1

the business of purchasing defaulted consumer debts.[2] Convergent, a Washington corporation that does business in Michigan, is a "debt collector" as defined by the FDCPA; it collects on consumer debts on behalf of creditors. Here, Convergent is attempting to collect a debt owned by Palisades.

**B.**

Palisades acquired a portfolio of AT&T Wireless accounts, including an account identified as owing by Luther.[3] (Doc. 39, Ex. 5 at Pg. ID 18). Each account details unpaid charges for telephone service. Palisades referred the Luther account to Convergent for collection.

On January 16, 2015, Convergent, on behalf of Palisades, sent Luther a settlement offer in an effort to collect on the account. (Redacted letter attached as Ex. A). The letter states in pertinent part:

> This notice is being sent to you by a collection agency. The records of Palisades Collection show that your account has a past due balance of $1,314.22.
>
> Our client has advised us that they are willing to offer you a reduced settlement amount of your total balance due to settle your past due balance. The full settlement amount or first payment of your selected payment program must be received in our office within 60 days of this letter. If you are interested in taking advantage of this settlement opportunity, please complete the below information and remit with your payment.

(Ex. A). On the back of the letter typed in small print is a disclaimer as required by 15 U.S.C. § 1692g:

---

[2] 15 U.S.C. § 1692a(6): The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another…
[3] According to Luther, the account in question was opened fraudulently and he is unaware of the purpose for which the account was used. (Doc. 33, Ex. 1, Dep. of Luther, at 50-52).

2

> Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office within 30 days from receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request this office within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

(Ex. A). The letter does not include details of Luther's account; however Palisade's account records state that the last payment made was on March 26, 2002. (Doc. 39, Ex. 5 at Pg. ID 18). The out-of-statute (OOS) date for the account was March 24, 2008. (Doc. 39, Ex. 5 at Pg. ID 18). Thus, when Convergent sent the settlement offer in January 2015, more than six years had elapsed since the last payment or activity on the account. The statute of limitations on a contract in Michigan is six years.[4] Nothing in the settlement offer discloses that Luther's debt was barred by the statute of limitations and not legally enforceable.

## C.

On March 11, 2015, Luther filed a putative class action against Defendants for violations of the FDCPA. The FDCPA prohibits the use of false representations or unfair practices in the course of an effort to collect a debt. Specifically, 15 U.S.C. § 1692e provides "a debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692f bars collectors from using "unfair or unconscionable means to collect or attempt to collect any debt."

---

[4] M.C.L. § 600.5807(8): The period of limitations is 6 years for all other actions to recover damages or sums due for breach of contract.

**D.**

Luther says that Convergent sent similar settlement offer letters seeking to collect on time barred debts to 6,800 Michigan residents in violation of the FDCPA. Luther seeks to represent these persons in this action. Luther asks the Court to certify the following class:

> [A]ll individuals with Michigan addresses to whom Convergent Outsourcing sent a letter offering a settlement of a debt owned by Palisades Collection, which had a date of last payment or activity more than six years prior to the letter, which letter was sent on or after a date one year prior to the filing of this action and on or before a date 20 days after the filing of this action.

(Doc. 1 at ¶ 20).

### III. LEGAL STANDARD

When determining whether or not to certify a class, the Court must first address whether the "class description is sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member." Young v. Nationside Mut. Ins. Co., 693 F.3d 532, 538 (6th Cir. 2012). "Administrative feasibility means that identifying class members is a manageable process that does not require much, if any, individual factual inquiry." Newberg on Class Actions, § 3:3 (5th ed.). "The existence of an ascertainable class of persons to be represented by the proposed class representative is an implied prerequisite of Federal Rule of Civil Procedure 23." John v. Nat'l Sec. Fire & Cas. Co., 501 F.3d 443, 445 (5th Cir. 2007).

If the Court finds the class to be ascertainable, it next looks to Fed. R. Civ. P. 23. Fed. R. Civ. P. 23(a) provides that "[o]ne or more members of a class may sue or be sued as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or

4

fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). "Ultimately, the class may only be certified if, after a rigorous analysis, the district court is satisfied that these prerequisites have been met. The burden is on the plaintiff to establish his right to class certification." Alkire v. Irving, 330 F.3d 802, 820 (6th Cir. 2003) (internal citations omitted).

In addition to satisfying the Rule 23(a) criteria, the proposed representative plaintiff must also meet one of the criteria listed in Rule 23(b). Here, Luther seeks certification pursuant to Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods" of adjudication. Fed R. Civ. P. 23(b)(3)(emphasis added).

## IV. DISCUSSION

The Court will address each factor in turn to determine whether class certification is appropriate.

### A. Ascertainable Class

#### 1. Defendants' Arguments Against Ascertainability

Defendants say that the proposed class is neither readily ascertainable nor administratively feasible. The FDCPA applies only to the collection of consumer debt, which the FDCPA defines as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family or household

purposes." 15 U.S.C. § 1692a(5). Defendants say that Luther's motion contains no explicit methodology for ascertaining whether the nature of each putative class member's debt is consumer debt or not. While Luther suggests that the nature of each debt at issue can be revealed through a review of Defendants' records, Defendants say they have no records demonstrating the nature of the underlying debt. Moreover, even if the records do exist, there is no evidence that these records could successfully reveal the primary purpose for which each individual debt was incurred. The fact that the accounts in question are AT&T Wireless accounts does not enable Defendants to definitively identify the purpose for which each debt was incurred. Further, Defendants contend that it is well-established law that an amorphous or imprecise class cannot be certified.

For support, Defendants rely on Riffle v. Convergent Outsourcing, Inc., et al., 311 F.R.D. 677 (M.D. Fla. 2015). In that case, the court denied class certification because the plaintiff failed to present any evidence as to how to identify the nature of the putative class members' debts. The court explained that "Plaintiff has simply intimated that the records of Defendants or the original creditor will be useful in identifying potential class members. She has neither presented evidence or precedent that allows the Court to confirm the validity of these methods." Id. at 681.

### 2. Plaintiff's Argument In Favor of Ascertainability

Luther distinguishes Riffle from this case. Luther argues that the plaintiff in Riffle presented no evidence as to the nature of the portfolio referred to the debt collector. The plaintiff merely asserted that the information could be ascertained from the records of the defendant.

In contrast, here, Luther points to several statements by Defendants which admit that the debts arise out of consumer transactions. First, Convergent has stipulated that there are approximately 6,800 persons who meet the objective class definition. (Doc. 39, Ex. 2). While Convergent only provided Luther with the account numbers and not the names of the individual account holders, it represented that the account holders were persons. (Doc. 39, Ex. 2).

Second, the Agency Collection Agreement (the Agreement) between Palisades and Convergent supports the fact that the debts are consumer debts. (Doc. 39, Ex. 4). The Agreement states that Convergent collects "defaulting consumer receivables." (Doc. 39, Ex. 4 at 2). The Agreement also states that Convergent is "experienced and currently engaged in the consumer collection industry." (Doc. 39, Ex. 4 at ¶ 6(a)).

Third, Palisades is a subsidiary of Asta Funding, Inc, which in its Form 10-K filing states that Palisades is in the business of "purchasing, servicing, and managing for its own account distressed <u>consumer</u> receivables…" (Doc. 39, Ex. 6 at 6). There is no evidence that Palisades purchased or referred to Convergent any debt other than a consumer debt. (Doc. 39, Ex. 2).

Fourth, "the need to show that the transactions involved in a particular case are consumer transactions is inherent in every FDCPA class action. If that need alone precluded certification, there would be no class actions under the FDCPA." <u>Wilkerson v. Bowman</u>, 200 F.R.D. 605, 609 (N.D. Ill. 2001)(internal citations omitted). Even if Defendants cannot differentiate between consumer and non-consumer debt for the Palisades accounts at issue, this fact alone does not preclude class treatment. If some minimal inquiry is necessary in order to determine the nature of the debts, this does not

7

preclude class certification. Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, LLC, 198 F.R.D. 503, 506 (N.D. Ill. 2001).

For support, Luther principally relies on Butto v. Collecto, Inc., 290 F.R.D. 372 (E.D.N.Y. 2013). In Butto, Collecto attempted to collect a Verizon Wireless debt similar to that being sought from Luther. Collecto asserted the same argument made by Defendants, arguing that it could not distinguish between consumer and business debt. In Butto, the court rejected the argument that the need to separate consumer debts from commercial debts precludes certification. Id. at 378, 383. The court further explained that based on the 18,949 letters sent to Verizon customers, "common sense would dictate that at least some percentage of these were sent to Verizon Wireless customers as opposed to Verizon Business and Telecom customers." Id. at 377. Finally, Butto noted:

> [A]ny potential hardship in determining the class can be alleviated by Rule 23(c)(1)(C), which allows the court to alter or amend an order that grants class certification before final judgment. In addition, any disputes regarding whether a particular class member's debt is consumer or commercial can be remedied through proper drafting of the claim form, and at the damages phase of this case.

Id. at 383 (internal citations omitted). The same reasoning applies here. The class is ascertainable.

### B. Fed. R. Civ. P. 23

### 1. Numerosity – Rule 23(a)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." There is no strict numerical requirement, but a "substantial" amount of members will suffice. Daffin v. Ford Motor Co., 458 F.3d 549, 552 (6th Cir. 2006).

Here, the complaint is based upon a general form collection letter. Defendants sent over 6,800 letters to Michigan residents within the class period. Neither party disputes that the numerosity requirement is satisfied.

### 2. Commonality – Rule 23(a)(2) & Predominance – Rule 23(b)(3)

Rule 23(a)(2) requires there be "questions of law or fact common to the class." There need only be one question common to the class, "the resolution of which will advance the litigation." Sprague v. General Motors Corp., 133 F.3d 388, 397 (6th Cir. 1998). The additional Rule 23(b)(3) predominance element requires that "a plaintiff must establish that 'the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole,... predominate over those issues that are subject only to individualized proof.'" Beattie v. CenturyTel, Inc., 511 F.3d 554, 564 (6th Cir. 2007) (citing In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 136 (2d Cir. 2001)).

Luther says that the common question of liability turns on whether the letter sent to him and putative class members violates the FDCPA. He argues that the only individual issues are the identification of the members of the class and actual damages. As discussed above, such ministerial matters "need not defeat class treatment of the question whether defendants violated [the law]." Carnegie v. Household Int'l, Inc., 376 F.3d 656, 661 (7th Cir. 2004).

Defendants argue, however, that individual issues predominate, because to meet the predominance requirement, the Court must conduct a highly fact-sensitive inquiry for each putative class member of the date of last payment and the circumstances surrounding each payment. (Doc. 32 at 14-17; Doc. 33 at 8-11). Defendants rely on

Clavell v. Midland Funding LLC, 2011 WL 2462046 (E.D. Pa. June 21, 2011), in which the court denied class certification in a FDCPA case because the court would be required to determine whether the debt was time-barred for each potential class member. Clavell, 2011 WL 2462046, at *4-5.

Luther differentiates this case from the facts in Clavell. Here, Palisades' records show, in the field designated OOS for each account, the date that Palisades has calculated as the statute of limitations. (Doc. 39, Ex. 5 at Pg. ID 10, 18). As such, the complicated factual determination that was the basis for denying a class in Clavell is not present here. Further, unlike in Clavell, the class here is limited to one state.

For additional support of his position, Luther cites Phillips v. Asset Acceptance, 736 F.3d 1076 (7th Cir. 2013). In Phillips, the court found it appropriate to certify a class of persons despite the necessary review of the defendant's records to determine the statute of limitations according to the nature of the debt and the date of last payment.

Here, class wide liability involves discussion of whether the letter sent to Luther and the putative class members violates the FDCPA by seeking settlement of time-barred debt. This issue predominates over any individual issues. There is no need for extensive factual inquiry for each class member as to the statute of limitations expiration date. Determining class membership here is a matter of generating a list from Defendants' computerized records. Because the central issue can be determined on a class-wide basis, Luther has satisfied the predominance requirement.

### 3. Typicality – Rule 23(a)(3)

Rule 23(a)(3) requires that the claim of the named plaintiff be typical of the claim of the class. "A claim is typical if it arises from the same event or practice or course of

conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." Beattie, 511 F.3d at 561 (internal citation omitted). "[T]he commonality and typicality inquiries overlap to a degree, but commonality focuses on similarities, while typicality focuses on differences." Merenda v. VHS of Michigan, Inc., 296 F.R.D. 528, 537 (E.D. Mich. 2013) (internal quotation marks and citation omitted).

Here, typicality is inherent in the class definition. Each class member was subject to the same practice as Luther. Neither party disputes that the typicality requirement is satisfied.

### 4.  Adequacy – Rule 23(a)(4)

Rule 23(a)(4) requires the class representative to fairly and adequately represent the interests of the putative class. The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only…[T]o justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 348 (2011)(internal citation omitted).

Here, Defendants contend that Luther is not an adequate class representative, because he contests that he owed the debt in question. As such, Defendants say that Luther has not and cannot establish that the debt was consumer in nature. Further, Defendants say that Luther is inadequate, because he cannot establish that he is a member of the putative class.

In response, Luther says that there is sufficient evidence to determine that the debts in question are consumer in nature. Courts have held that fraudulent accounts

arising from identity theft should be treated as consumer debts. Dunham v. Portfolio Recovery Assocs., LLC, 663 F.3d 997, 1002 (8th Cir. 2011)("Thus, we read §1692a(3) to include individuals who are mistakenly dunned by debt collectors"). The fact that Luther contends that he does not owe the debt and that he has a defense to the underlying debt does not disqualify him from representing the putative class with respect to the FDCPA claim arising from the form document that was sent to each putative class member. Luther received the same settlement form that 6,800 other individuals received in an attempt to collect a debt more than 6 years after the date of last payment in a state where the statute of limitations on a contract is 6 years. The class claim is fairly encompassed by Luther's individual FDCPA claim; Luther is a member of the class.

### 5. Superiority – Rule 23(b)(3)

A class action is superior "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." Young v. Nationwide Mut. Ins. Co., 693 F.3d 532, 545 (6th Cir. 2012)(quoting Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 339 (1980)). On a similar note, "[a] class action is superior where potential damages may be too insignificant to provide class members with incentive to pursue a claim individually." Randolph v. Crown Asset Mgmt., LLC., 254 F.R.D. 513, 520 (N.D. Ill. 2008)(quoting Jackson v. Nat'l Action Fin. Servs., Inc., 227 F.R.D. 284, 290 (N.D. Ill. 2005).

Here, where each individual class member's recovery would be small and the class size is large, combining identical claims into a single action is the superior and most efficient way to resolve the claims.

## V.  CONCLUSION

For the reasons stated above, Plaintiff's Motion for Class Certification is GRANTED. A status conference will be held on May 31, 2016 at 2:00 pm to chart the future course of the case.

SO ORDERED.


Dated: April 28, 2016  
Detroit, Michigan

          s/Avern Cohn  
          AVERN COHN  
          UNITED STATES DISTRICT JUDGE